**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TERESA ROJAS**<br>East Elmhurst, NY | Civil Action No. |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMANDED** |
| **ST. PATRICK'S CATHEDRAL**<br>5th Ave between 50th/51st Streets<br>New York, NY 10022 | |
| and | |
| **ARCHDIOCESE OF NEW YORK**<br>1011 1st Ave<br>New York, NY 11220 | |
| *Defendants.* | |

## **COMPLAINT**

## I.    **INTRODUCTION**

Plaintiff, Teresa Rojas, brings this action against her former employers, St. Patrick's Cathedral and the Archdiocese of New York ("Defendants"), for discriminating against Plaintiff based upon her race, sex and disability, and for retaliating against Plaintiff as a result of her complaints of discrimination and need for FMLA-protected leave.

Plaintiff, a long-term employee with over twenty-eight (28) years of service, was subjected to severe race- and sex-based harassment, including being repeatedly called "spic," "bitch," and "Hispanic bitch" by her supervisor, the Executive Director of St. Patrick's Cathedral. Plaintiff complained repeatedly to management and human resources about the discrimination, but her complaints were dismissed and she was told to be "thankful to even have a job." Defendants forced Plaintiff to return early from FMLA-protected medical leave for knee surgery, contrary to her

doctor's advice, and then fired her on July 30, 2024 for false and pretextual reasons shortly after and because of her protected activity.

Defendants discriminatory and retaliatory conduct towards Plaintiff is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"), the New York State Human Rights Law, as amended, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, as amended, N.Y.C. Admin. Code § 8-101, *et seq.* ("NYCHRL").

Plaintiff is seeking all available relief, including without limitation, economic loss, compensatory damages, punitive damages, liquidated damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II.    PARTIES

1.    Plaintiff, Teresa Rojas, is an individual and a citizen of the State of New York, residing in East Elmhurst, New York.

2.    Plaintiff is female.

3.    Plaintiff is Hispanic.

4.    At all relevant times, Plaintiff was disabled in that she suffered from an impairment, which substantially limited one or more of her major life activities, had a record of impairment and/or was regarded as having such impairment.

5.    As of the time of Plaintiff's termination on July 30, 2024, she worked at Defendants' location on 5th Ave between 50th/51st Streets, New York, NY 10022.

6.    Defendant St. Patrick's Cathedral maintains a principal place of business on 5th Ave between 50th/51st Streets, New York, NY 10022.

2

7.    Defendant St. Patrick's Cathedral is engaged in an industry affecting interstate commerce and regularly does business in the state of New York.

8.    Defendant Archdiocese of New York maintains a principal place of business at 1011 1st Ave, New York, NY 10022.

9.    Defendant Archdiocese of New York is engaged in an industry affecting interstate commerce and regularly does business in the state of New York.

10.    At all times material hereto, Defendants acted as joint employers of Plaintiff.

11.    Defendant Archdiocese of New York is the "alter ego" of its various subsidiary controlled entities, including Defendant St. Patrick's Cathedral.

12.    Defendants collectively presented themselves as a single entity such that third parties dealt with them as such.

13.    Defendant Archdiocese of New York shares with its controlled subsidiary entities, including Defendant St. Patrick's Cathedral, *inter alia*, common ownership, personnel, facilities, personnel policies and employment practices.

14.    Defendant Archdiocese of New York and its subsidiary entities, including Defendant St. Patrick's Cathedral, are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise. Defendants, through their interconnectedness, collectively caused the actions complained of herein.

15.    At all times material hereto, Defendants employed more than fifty (50) employees within a seventy-five (75) mile radius of Plaintiff's workplace.

16.    Plaintiff was employed for at least twelve hundred and fifty (1,250) hours of service during the preceding twelve (12) month period.

17.    At all times material hereto, Defendants acted by and through their authorized

3

agents, servants, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

18.     At all times material hereto, Defendants acted as an employer within the meaning of the statutes which form the basis of this matter.

19.     At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

III.    **JURISDICTION AND VENUE**

20.     The causes of action which form the basis of this matter arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Family Medical Leave Act, 29 U.S.C. §2601, et seq. ("FMLA"), the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq. ("NYCHRL").

21.     The District Court has jurisdiction over Plaintiff's Title VII claims (Count I) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

22.     The District Court has jurisdiction over Plaintiff's Section 1981 claims (Count II) pursuant to 28 U.S.C. § 1331.

23.     The District Court has jurisdiction over Plaintiff's ADA claims (Count III) pursuant to 42 U.S.C. § 12117 and 28 U.S.C. § 1331.

24.     The District Court has jurisdiction over Plaintiff's FMLA claims (Count IV) pursuant to 29 U.S.C. §2617(a)(2) and 28 U.S.C. §1331.

25.     The District Court has jurisdiction over Plaintiff's NYSHRL claims (Count V) pursuant to 28 U.S.C. § 1367.

4

26.     The District Court has jurisdiction over Plaintiff's NYCHRL claims (Count VI) pursuant to 28 U.S.C. § 1367.

27.     Venue is proper in the District Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

28.     On or about October 24, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein. Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

29.     On or about March 10, 2026, Plaintiff received from the EEOC a Notice of Right to Sue in connection with her Charge of Discrimination. Attached hereto, incorporated herein, and marked as Exhibit "2" is a true and correct copy of the EEOC Notice of Right to Sue (with personal identifying information redacted).

30.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

31.     Plaintiff was hired by Defendants in or around April 1996.

32.     At the time of Plaintiff's termination in July 2024, she had more than twenty-eight (28) years of service at Defendants.

33.     Plaintiff last held the position of Head Rector Secretary.

34.     Plaintiff last reported to Father Enrique Salvo (Hispanic/male) and Kevin Donohue, Executive Director (white/male).

35.     Plaintiff consistently demonstrated positive performance and dedication to

Defendants. She performed her job responsibilities in a highly competent manner.

36.    During the course of Plaintiff's employment with Defendants, her supervisors – particularly the Executive Director of the Cathedral, Kevin Donohue – subjected her to a variety of discriminatory comments including, by way of example only and without limitation, repeatedly referring to her as a "spic," a "bitch" and a "Hispanic bitch."

37.    Mr. Donohue generally treated female employees, including Plaintiff, differently and worse compared to male employees, including, by way of example only and without limitation, lashing out at female employees with profanity, name calling and generally demeaning behavior.

38.    To Plaintiff's knowledge, Mr. Donohue did not treat male employees in this same or similar manner.

39.    To Plaintiff's knowledge, Defendants did not refer to non-Hispanic employees as "spics."

40.    To Plaintiff's knowledge, Defendants did not refer to male employees as "bitches."

41.    Female employees have complained about Mr. Donohue's behavior.

42.    These racist and sexist comments were often made in front of Plaintiff's coworkers and sometimes over the two-way radios that staff used to communicate during work, which was humiliating and degrading.

43.    Plaintiff repeatedly complained about these racist and sexist comments to management and human resources, including complaints to her former supervisor, Robert Ritchie, her most recent supervisor, Enrique Salvo, and human resources representative Nicholas Salvador, as well as Mr. Salvador's assistant, Claudia.

44.    As part of her complaints of discrimination, Plaintiff provided specific examples.

45.    Defendants failed to take appropriate investigative, remedial or corrective measures

in response to Plaintiff's complaints.

46. As a result, the discriminatory behavior continued.

47. In or around June 2023, Plaintiff scheduled a meeting with Ella O'Sullivan (white/female), Executive Director of Human Resources, Archdiocese of New York, as part of an effort to convince Defendants to address the hostile work environment that she was being forced to endure.

48. During her meeting with Ms. O'Sullivan, Plaintiff complained of race discrimination and sex discrimination, and she provided specific examples of the same, which includes informing Ms. O'Sullivan of the fact that she was being referred to as a "spic" and a "bitch," among other things, by her supervisors in the workplace and in front of colleagues. Plaintiff explained how offensive and humiliating this was.

49. In response, Ms. O'Sullivan told Plaintiff that her complaints of discrimination were "hard to believe," that she should be "thankful to even have a job" and that perhaps she was being overly sensitive because she is Hispanic.

50. Ms. O'Sullivan had no legitimate basis to make those comments in response.

51. Plaintiff understood Ms. O'Sullivan's response to indicate that Defendants did not take her complaints seriously, had no intention of investigating or remedying them, and to the contrary, that Defendants wanted to dissuade her from making any further complaints by suggesting that her complaints would not be believed and/or that her employment would be jeopardized by doing so.

52. In or around late-January 2024, Plaintiff initiated an FMLA-protected medical leave of absence for knee surgery and recovery from the same.

53. Plaintiff was initially scheduled to return to work in or around late-April 2024, but

Defendants pressured her to return to work in or around February 2024, after only approximately two (2) weeks of leave, contrary to her doctor's advice.

54. Although Plaintiff had not fully recovered from her surgery, per Defendants' request, she returned to work in or around February 2024.

55. In or around June 2024, Plaintiff was contacted by the police and learned that Defendants had apparently falsely reported to the authorities that she had engaged in improper conduct with regard to two (2) checks that were issued to her, in her name, in or around December 2023.

56. Plaintiff was blindsided and perplexed by these false accusations.

57. Prior to Plaintiff's discussions with the police in June 2024, Defendants had not brought to her attention any issues with these two (2) checks from back in late-2023, and Defendants had not accused her of any wrongdoing whatsoever.

58. Plaintiff's discussion with the police in June 2024 is how she was first informed of any alleged issues concerning these two (2) checks from in or around December 2023.

59. Defendants have not provided any legitimate, non-retaliatory explanation as to why they did not address this alleged issue with Plaintiff directly during the prior six (6) months (i.e., from in or around December 2023 to June 2024), and instead decided to report her to the police behind her back.

60. Plaintiff understood Defendants' conduct to be part of an effort to humiliate her, intimidate her and retaliate against her as a result of her having the courage to report concerns of discrimination.

61. Plaintiff explained to the police that she had not done anything wrong, and that she had simply deposited two (2) checks that were made out directly and solely to her.

62. On or about July 30, 2024, Plaintiff had a meeting with Ms. O'Sullivan during which Plaintiff was questioned about the checks at issue. Plaintiff explained that she had not done anything wrong and that she had simply deposited two (2) checks that were made out directly and solely to her.

63. Defendants have been unable to provide any legitimate or coherent explanation as to what, if anything, Plaintiff did wrong with regard to one or both of these checks from in or around December 2023.

64. On or about July 30, 2024, Defendants terminated Plaintiff's employment.

65. Defendants' stated reason for terminating Plaintiff's employment was that she deposited a single $100 check (which was one of the checks issued to her in her name in late-2023) that Defendants stated she should not have deposited, despite the fact that the check was issued to her, and without any legitimate explanation as to how or why her depositing this check was improper in any way.

66. Defendants never asked for the money back, since they had no legitimate basis to claim it was theirs or that it was not Plaintiff's.

67. Defendants' stated reason for terminating Plaintiff's employment – after more than twenty-eight (28) years of service, shortly after she engaged in protected activity and required time off for a medical leave – is false, nonsensical and a pretext for unlawful discrimination and retaliation.

68. Prior to her termination, Plaintiff had not been issued any progressive discipline, write ups, performance improvement plans or any other corrective action at Defendants.

69. Defendants offered Plaintiff a severance agreement upon her termination that would have had her release and waive all legal claims against Defendants in exchange for

approximately $5,000.

70.    Defendants encouraged Plaintiff to sign the severance agreement to release her claims.

71.    Plaintiff did not agree to the severance offer.

72.    Defendants failed to provide any explanation for offering Plaintiff a $5,000 severance if they truly believed they had a legitimate basis to terminate her employment.

73.    Through Defendants' conduct as set forth herein, Defendants subjected Plaintiff to inferior terms, conditions and privileges of employment.

74.    The conduct of Defendants as set forth herein was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment with Defendants.

75.    The harassment to which Plaintiff was subjected, as described herein, rises above the level of what a reasonable discrimination victim would consider a petty slight or inconvenience.

76.    Defendants failed to investigate or remedy Plaintiff's complaints of discrimination, and failed to take any corrective or remedial measures.

77.    The conduct of Defendants as set forth herein – including, without limitation, making unfounded reports against Plaintiff to the authorities and terminating her employment for false reasons – would dissuade a reasonable employee from complaining of discrimination.

78.    Plaintiff's race and national origin were motivating and/or determinative factors in the discriminatory treatment to which she was subjected by Defendants.

79.    Plaintiff's sex was a motivating and/or determinative factor in the discriminatory treatment to which she was subjected by Defendants.

80.    Plaintiff's disability and her need for FMLA-protected leave were motivating

10

and/or determinative factors in the discriminatory treatment to which she was subjected by Defendants.

81.     Plaintiff's complaints of discrimination were motivating and determinative factors in the retaliatory treatment to which she was subjected by Defendants.

82.     Defendants failed to prevent, investigate, or remedy the discriminatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory conduct.

83.     The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

84.     As a direct and proximate result of Defendants' discriminatory and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

85.     Defendants acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights. Defendants' conduct as set forth herein demonstrates a high degree of moral culpability which manifests a conscious disregard of Plaintiff's rights and the rights of others and/or is so reckless as to amount to such disregard, warranting the imposition of punitive damages.

### COUNT I - TITLE VII

86.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

11

87.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

88.     Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

89.     As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

90.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

91.     No previous application has been made for the relief requested herein.

## COUNT II - SECTION 1981

92.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

93.     By committing the foregoing acts of discrimination and retaliation, Defendants have violated Section 1981.

94.     Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

95.     As a direct and proximate result of Defendants' violations of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

96.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

97.     No previous application has been made for the relief requested herein.

## COUNT III - ADA

98.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

99.    By committing the foregoing acts of discrimination, Defendants have violated the ADA.

100.    As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

101.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

102.    No previous application has been made for the relief requested herein.

## COUNT IV - FMLA

103.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

104.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the FMLA.

105.    By forcing Plaintiff to return from her FMLA-protected leave prior to the full duration of her entitlement, and by terminating Plaintiff's employment as a result of her need for FMLA-protected leave, Defendants have violated the FMLA.

106.    Plaintiff's exercise of her FMLA rights was considered as a negative factor, and was a motivating and determinative factor in Defendants' conduct towards Plaintiff, including its decision to harass and terminate Plaintiff.

107.    Defendants interfered with Plaintiff's FMLA rights, and retaliated against Plaintiff

for exercising her FMLA rights, by forcing Plaintiff to return to work prior to the end of her FMLA-protected leave.

108. Said violations were not in good faith, and Defendants did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

109. Defendants' violations of the FMLA warrant the imposition of liquidated damages.

110. As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

111. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the FMLA unless this Court grants the relief requested herein.

112. No previous application has been made for the relief requested herein.

## COUNT V - NYSHRL

113. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

114. By committing the foregoing acts of discrimination and retaliation, Defendants have violated the NYSHRL.

115. Said violations were intentional and willful.

116. As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

117. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

14

118.    No previous application has been made for the relief requested herein.

### COUNT VI - NYCHRL

119.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

120.    By committing the foregoing acts of discrimination and retaliation, Defendants have violated the NYCHRL.

121.    Said violations were intentional and willful.

122.    As a direct and proximate result of Defendants' violations of the NYCHRL, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

123.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

124.    No previous application has been made for the relief requested herein.

### RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a.    declaring the acts and practices complained of herein to be in violation of Title VII;

b.    declaring the acts and practices complained of herein to be in violation of Section 1981;

c.    declaring the acts and practices complained of herein to be in violation of the ADA;

d.      declaring the acts and practices complained of herein to be in violation of the FMLA;

e.      declaring the acts and practices complained of herein to be in violation of the NYSHRL;

f.      declaring the acts and practices complained of herein to be in violation of the NYCHRL;

g.      enjoining and permanently restraining the violations alleged herein;

h.      entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

i.      awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

j.      awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional distress, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

k.      awarding punitive damages to Plaintiff under Title VII;

l.      awarding punitive damages to Plaintiff under Section 1981;

m.      awarding punitive damages to Plaintiff under the ADA;

n.      awarding punitive damages to Plaintiff under the NYSHRL;

o.      awarding punitive damages to Plaintiff under the NYCHRL;

p.      awarding liquidated damages to Plaintiff under the FMLA;

q.      awarding Plaintiff pre-judgment and post-judgment interest;

r.      awarding Plaintiff the costs of suit and reasonable attorneys' fees;

s.      awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, the ADA, the FMLA, the NYSHRL and the NYCHRL; and,

t.      granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW LLC**

By:   _____

KEVIN CONSOLE, ESQ.
5 Penn Plaza, 19th Floor, Suite 1946
New York, NY 10001
Phone: (917) 985-7761
kevinconsole@consolelaw.com

Dated: 6/2/2026                    *Attorneys for Plaintiff, Teresa Rojas*